**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Christine Liedtke** ) | **CASE NO. 1:05-cv-2990** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **John Frank,** ) | **Memorandum of Opinion and Order** |
| **Javitch, Block and Rathbone,** ) | |
| **HSBC Bank Nevada, N.A., formerly** ) | |
| **Household Bank (SB) N.A., and** ) | |
| **Equifax Information Services** ) | |
| ) | |
| **Defendants.** ) | |

### INTRODUCTION

There are three motions properly before the Court. The first motion is Defendant HSBC Bank Nevada, N.A., Formerly Household Bank (SB), N.A.'s Motion to Stay Litigation Pending Arbitration. (Doc. 19). The second is the Motion of John Frank and Javitch, Block & Rathbone LLP to Dismiss for Failure to State a Claim, or in the Alternative, for Summary Judgment, filed in State court prior to removal. The third motion is Plaintiff's Motion to Make Definite and Certain. (Doc. 23). This case arises out of Defendants' activities with respect to an allegedly

1

fraudulent credit card debt. For the reasons that follow, the motion to stay claims against HSBC Bank Nevada, N.A., Formerly Household Bank (SB), N.A., pending arbitration is GRANTED,[1] the motion to dismiss is GRANTED in part and DENIED in part, and the motion to make definite and certain is DENIED.

**FACTS**

Plaintiff Christine Liedtke applied for a General Motors MasterCard via the internet on or about May 1, 2001. The internet application process required Plaintiff to enter her personal information and to affirmatively state her agreement to "The GM Card and GM Platinum Card Cardmember Agreement and Disclosure Statement." When the card was mailed to Plaintiff, she also received a hard copy of the Cardmember Agreement. The Cardmember Agreement refers to the entity issuing the card as "Household Bank (SB), N.A., Las Vegas, Nevada" (hereinafter "Household"). The Cardmember Agreement states that "you and we [Household] will be bound by [the Agreement] from the time you receive your Card or Agreement." The Cardmember Agreement also states that users may "cancel this Account before using it without paying any fees."

The GM Card was a credit card that allowed Plaintiff to earn money towards the purchase of a General Motors vehicle. The Cardmember Agreement explains the relative roles of General Motors and Household as follows:

> You understand The GM Card Earnings and Redemption Allowance Program is offered by General Motors Corporation ("GM") and is subject to The GM Card Earnings and Redemption Allowance Program Rules. GM is not a party to this agreement and does not participate in any extensions of credit. GM is solely

---

[1] Because the motion to stay pending arbitration is granted, Plaintiff's motion for judgment on the pleadings (Doc. 20) is MOOT.

2

responsible for The GM Card Earnings and Redemption Allowance Program. We disclaim any liability or responsibility for GM's failure to award or redeem any GM card earnings.

Plaintiff eventually did make purchases with the GM Card. However, one transaction in particular is relevant to this lawsuit. Sometime in 2004, Plaintiff received a "free" credit report via the internet website Consumerinfo.com. The website advertised a "**Free** credit report when you sign up for a free 30-day trial of **CreditCheck**." When Plaintiff failed to cancel the CreditCheck service within 30 days, she was automatically signed up for a credit monitoring service at $79.95 plus $9.95 per month. The cost of the credit monitoring service was charged to Plaintiff's GM Card, and resulted in over limit charges and other fees.

Plaintiff disputed the charges. The first response letter states that "We have received your recent request concerning your account issued by HOUSEHOLD BANK (SB), N.A. . . . We will respond to you in writing once our investigation of this matter is complete." The next letter of October 20, 2004, states in relevant part as follows:

> We are writing to you regarding your account issued by HOUSEHOLD BANK (SB), N.A.
>
> \*     \*     \*
>
> Your letter indicates that you went online asking for a free credit report. By doing this you signed up for a 30 day trial membership. The terms of this merchant are that you need to cancel before the 30 days are up and then you wont [sic] be billed. You didnt [sic] cancel so you got billed. . . . The terms are clear on the website you entered your information into.
>
> \*     \*     \*
>
> At this time we have no means to pursue this matter further and consider the matter resolved. For further restitution please contact the merchants directly.

3

Household sought payment of the account. As of January 3, 2005, Household[2] sent Plaintiff a letter indicating a balance of $357.80 with $72.80 past due. For her part, Plaintiff continued to pursue the matter through her attorney. This resulted in the following response from Household:

> We have printed the terms and conditions from the website and have included them with this letter, as per your request. Your letters indicate that this is the website where the cardholder entered the account number to get a free credit report. The website's first page indicates: "get your free credit report when you sign up for a 30-day trial of CreditCheck." The terms and conditions also indicate that if the trial is not canceled within 30 days, the account will be charged an annual monthly fee. The account with the merchant was not cancelled and therefore the credit card was charged.
>
> We do not consider this fraud since the customer participated in the transaction. We previously contacted the merchant in November 2004 and cancelled the membership on the cardmembers [sic] behalf so that no future billings would occur.
>
> During our phone conversation on February 10, 2005 we offered to credit a portion of the ancillary fees assessed to the above referenced account. You declined this offer; therefore we consider these disputes resolved.
>
> We have conducted an investigation and based on the information above, we consider this matter resolved.

Plaintiff eventually cancelled her account in January of 2005. On April 4, 2005, Defendant Frank of the law firm Javitch, Block & Rathbone LLP (also a Defendant) (hereinafter "Javitch") sent a letter to Plaintiff seeking payment of a $563.08 balance allegedly due to "Household Bank (SB), N.A." The next day, the law firm sent an inquiry to Equifax Information Services regarding Plaintiff's credit for the stated "permissible purpose" of "collection." As of July 2005, Plaintiff's credit report also indicated that Household had charged off an outstanding

---

[2] The letter has the word HOUSEHOLD in large bold letters in the upper right hand corner.

balance of $793 as bad debt.

In the meantime, the business practices of Consumerinfo.com, Inc., a subsidiary of the Experian credit reporting agency, were coming under attack. On September 16, 2003, a complaint was filed with the Federal Trade Commission challenging Consumerinfo.com's practice of offering "free" credit reports and then charging for the credit monitoring service when the user failed to cancel. This eventually resulted in a settlement between the FTC and Consumerinfo.com entered on August 15, 2005. The settlement enjoined Consumerinfo.com from misrepresenting its products or services, and set out specific disclosures to be made in advertisements and on the internet. It was also required to pay $950,000 and provide refunds to consumers who used the service through September 15, 2003. Nonetheless, the settlement stipulates that "Defendant makes no admissions as to the allegations in the Complaint, other than the jurisdictional facts."

Plaintiff's counsel then sent another letter to Defendant Frank, again disputing the underlying charges and asking the Javitch firm to either file suit or rescind its collection inquiry from Plaintiff's credit report. No actions were taken against Plaintiff in response to her letter. She filed this lawsuit in State court on Dec. 1, 2005. The case was removed to this Court on December 29, 2005.

The Complaint names Frank, Javitch and Household as defendants. Also named as a defendant is Equifax Information Services, a credit reporting service that has published the "collection" inquiry of Javitch and the "bad debt" statement from Household. Plaintiff's Complaint alleges that Household does not have an interest in her credit card and that the credit card was actually with General Motors. It continues that Household has taken a fraudulent

5

$99.85 debt (the $79.95 fee plus two months at $9.95) and compounded it through late fees, over limit fees and interest charges to nearly $800.00. The "collection" and "bad debt" statements are alleged to be leverage to force Plaintiff, a graduate student who utilizes student loans, to pay the now-inflated amount. At the same time, Plaintiff alleges that Frank and Javitch never intended to collect from plaintiff, thus making their claim that the credit inquiry was for proper "collection" purposes questionable. Finally, Equifax continues to publish the damaging credit inquiries on its credit reports, thus damaging Plaintiff's credit.

Plaintiff brings counts of "Disputed Debt," "Standing to Collect a Debt," "Disputed Interest," "Disputed Amount," "No Damages Cognizable at Law," "Interference with a Contractual Relation," "Breach of Contract," "Failure to Exercise Ordinary Care," "Intentional Delay/Laches," "Action on an Account," "Unjust Enrichment," "Damage to Credit/Invasion of Privacy," and "Invasion of Privacy by Defendant Equifax."

Defendant Household has filed a motion to arbitrate, based on an arbitration clause in the Cardholder Agreement which includes the following language:

> **THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

Defendants Javitch and Frank have filed a motion to dismiss, or in the alternative, a motion for summary judgment. Plaintiff has also filed a motion to make definite and certain seeking certain information from Household.

**DISCUSSION**

Motion to Stay Pending Arbitration

The Federal Arbitration Act requires courts to stay actions that are referable to arbitration.  9 U.S.C. § 3.  Courts perform the following four-step analysis:

1)  Determine whether the parties agreed to arbitrate;

2)  Determine the scope of the agreement;

3)  If federal statutory claims are involved, assess whether Congress intended those claims to be nonarbitrable; and

4)  If only some of the claims are subject to arbitration, determine whether the remaining claims should be stayed.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  Any doubts regarding arbitrability should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiff mainly disputes whether she agreed to arbitrate.  She posits that her credit card was with General Motors, not Household.  General Motors then "resolved" her account.  According to Plaintiff, Household is asserting an account in which it never held an interest, and the Cardmember Agreement, which was never signed by Plaintiff, does not apply to her.

Plaintiff's story simply does not fit with the facts.  When she applied for the GM Card on the internet she agreed to be bound by the Cardmember Agreement.  She then received the Cardmember Agreement with her credit card and had an opportunity to cancel the card without penalty if she did not agree to those terms.  Instead, she used the card.  Under these circumstances, she is clearly bound by the Cardmember Agreement.  *See Higgs v. Auto. Warranty Corp. of Am.*, No. 0-4381, 2005 U.S. App. LEXIS 8688, *8-9 (6th Cir. May 13, 2005) (applying Ohio law and approving the application of contract terms from an "accept-or-reject"

type of agreement); *Register.Com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (noting that individuals are bound by contract terms when they click on the "I Agree" box during an internet purchase); *Mathias v. America Online, Inc.*, No. 79427, 2002 Ohio App. LEXIS 876, *5-7 (Feb. 28, 2002) (holding individuals to "terms of service" agreed to over the internet).

The Cardmember Agreement also stated that Household was the entity extending credit to Plaintiff. Although the credit card is called a "GM Card," the Cardmember Agreement clearly indicates that "GM is not a party to this Agreement and does not participate in any extensions of credit." GM's only involvement was in the awarding of points that could be used toward the purchase of GM vehicles. Indeed, the "free" credit report at issue, which is attached to Plaintiff's Complaint, includes an account with Household but no account with GM. The later correspondence between the parties regarding the credit report states that "HOUSEHOLD" issued the card. Since Household was the entity entering into the Cardmember Agreement with Plaintiff, her claims against Household are subject to the arbitration clause.

Plaintiff's claim that the credit dispute was somehow "resolved" is similarly baseless. The letters, quoted at length above, state that Household considered Plaintiff's claims of fraud to be "resolved" only in the sense that Household did not find her claims to have merit and was not pursuing the matter with the merchant any further. Household's conclusion, and the fees that resulted from that conclusion, might be questioned. What cannot be questioned is that Household clearly conveyed that it expected Plaintiff to pay for the charges, and that the parties' dispute over that conclusion is subject to the arbitration agreement.

The second step is to determine the scope of the arbitration agreement. The Sixth Circuit distinguishes between "broad" and "narrow" arbitration clauses. *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005). If the arbitration clause is broad, all claims are reserved for arbitration

8

absent an express provision excluding a particular dispute or the most forceful evidence of an intent to exclude a particular claim. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). A claim falls outside of the scope of the arbitration agreement only if it could be maintained without reference to the contract or transaction subject to the agreement. *Fazio*, 340 F.3d at 395. The arbitration clause at issue here qualifies as a broad clause and applies to all of Plaintiff's claims:

> You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

The third step recognizes that certain federal statutory claims might be exempt from arbitration pursuant to the will of Congress. The party opposing arbitration has the burden to demonstrate that Congress intended to preclude the voluntary waiver of judicial remedies. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Plaintiff has not presented any evidence or argument to support her burden.

The fourth step only applies if some of the claims are not subject to arbitration. Here, all of the claims against Household must be arbitrated.

Accordingly, all claims against Household must be stayed pending arbitration.

Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).

9

A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

Defendant Frank is an attorney for the Javitch law firm. Frank sent Plaintiff a letter regarding collection while Javitch made a collection inquiry on Plaintiff's credit report. There is no other connection between Plaintiff and these defendants. In this regard, the vast majority of Plaintiff's claims simply do not apply to Frank and Javitch. There is no debt or amount owed between plaintiff and these defendants. Thus there is no claim for "Disputed Debt," Disputed Amount," "Action on an Account," or "Unjust Enrichment." They have no contract and Plaintiff has not attempted to explain how they have interfered with any contracts with others. Thus, Plaintiff has no claim of "Breach of Contract" or "Interference with a Contractual Relation" against Frank or Javitch. Similarly, Plaintiff's claims of "Failure to Exercise Ordinary Care" and "Invasion of Privacy by Defendant Equifax" do not apply to Frank or Javitch.

As to the claim for "Disputed Interest," the Court doubts whether it could apply to Defendants Frank and Javitch. In any event, this claim appears to be based on Plaintiff's erroneous understanding that her credit card was with General Motors and that General Motors "resolved" the dispute in her favor. Although this is a motion to dismiss, the Court can consider documents which are attached to the Complaint in determining whether Plaintiff can state a claim. *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). Here, Plaintiff has attached numerous letters and credit reports to her Complaint. As was discussed in detail above, these documents clearly indicate that her credit card was with Household and that Household concluded that the Plaintiff was required to pay for the credit report and the other charges stemming from the credit report. Frank and Javitch have acted on behalf of Household.

Finally, Plaintiff brings claims for "Standing to Collect a Debt" and "Intentional Delay/Laches." The gravamen of these claims as applied to Defendants Frank and Javitch appears to be that they have not attempted to collect in spite of their statement in the credit report that their search was for the purpose of collection.

The Court finds that Plaintiff's allegations support a claim under the Fair Credit Reporting Act ("FCRA"). Although somewhat inartful, Plaintiff's Complaint cites to the FCRA. (¶16). She thereafter alleges the collection inquiry was made, but that no attempt at collection was in fact ever made. (¶¶ 17-19). She alleges that this was an intentional attempt not to conduct legitimate collection activities but to ruin her credit and collect a fraudulent debt. (*Id*.). As a graduate student in need of student loans, she is in particular need of credit. (¶19).

Federal law limits the ability of a party to search an individual's credit report. 15 U.S.C. § 1681 *et seq.* The searching party must have a "permissible purpose" for doing so. 15 U.S.C. § 1681b. One such permissible purpose is collection. 15 U.S.C. § 1681b(a)(F). Here, Plaintiff

11

contends that there never was an intention to collect.  When a party willfully or negligently accesses a credit report without a permissible purpose or does so under false pretenses, the aggrieved individual may seek damages.  15 U.S.C. §§ 1681n, 1681o, 1681q.  Accordingly, Plaintiff has stated a claim under the FCRA.

Frank and Javitch also argue that any claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.SC. § 1692 *et seq,* must fail in light of *Smith v. Transworld Sys, Inc*., 953 F.2d 1025 (6th Cir. 1992).  In *Transworld*, the Plaintiff brought a claim against a collections company under the FDCPA.  Among other things, the FDCPA imposes a procedure whereby a person subject to collection can request verification of the debt.  15 U.S.C. § 1692g(b).  The collecting entity must cease collection until the debt is verified.  *Id.*

In *Transworld*, the collecting entity accidently sent another collection letter to the plaintiff after he had requested verification.  953 F.2d at 1031.  The Court excused this later collection letter and otherwise found that the collecting entity had ceased collection activities as required by that statute.  *Id.* at 1031-32.  Defendants argue that under the FDCPA scheme endorsed by *Transworld*, they properly ceased all collection activities after Plaintiff's request for verification.  Here, Plaintiff admits that all overt collection efforts ceased; indeed, she alleges that actual collection was never attempted or intended.  Instead, Plaintiff argues that collection is being performed through passive "credit strangulation" by abuse of the credit reporting system.  This argument merely demonstrates that the proper avenue for such a claim is the FCRA.  Plaintiff has not stated a claim under the FDCPA.

In sum, Plaintiff's Complaint states one claim against Frank and Javitch under the Fair Credit Reporting Act.   All other claims are dismissed.

<u>Motion to Make Definite and Certain</u>

Federal Rule of Civil Procedure 12(e) states as follows:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Here, Plaintiff seeks for "Defendant Household Bank SB (NA) to make definite and certain the amount of its claim against the Plaintiff at this time[,]" along with other information related to such a claim. However, Household has not stated any claim against Plaintiff as part of this litigation. There is no "pleading to which a responsive pleading is permitted" at issue and Rule 12(e) simply does not apply. What Plaintiff appears to request is matter relevant to her claims against Household, and would be properly addressed through conventional discovery devices.[3]

**CONCLUSION**

---

[3] The dispute over the motion to make definite and certain is representative of how the parties' obstinance has resulted in needless legal fees and a waste of resources. Among other things, Plaintiff seeks information such as an itemization of the fees charged to her account and the total amount owed on the account. Defendant has no reason not to acquiesce in this request, regardless of its improper presentation. Lawyers acting in the best interest of their clients should recognize that matters such as this are much better resolved through a brief phone call between counsel rather than weeks of federal motion practice. Indeed, this entire dispute, which already has hundreds of pages of pleadings and motions, appears to be the result of parties unable to deal with each other in a reasonable manner. Had they done so, a dispute over less than $100 in credit card charges would have been resolved long ago without spending many times more than that in legal fees.

The motion to stay claims against Household pending arbitration is GRANTED[4], the motion to dismiss of Defendants Frank and Javitch, Block & Rathbone LLP is GRANTED in part and DENIED in part, and the motion to make definite and certain is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  3/10/06

---

[4] Because the motion to stay pending arbitration is granted, Plaintiff's motion for judgment on the pleadings (Doc. 20) is MOOT.